## FUNK & WAGNALLS CO. v. TIMELY FILMS, Inc.

(Court of Appeals of District of Columbia. Submitted November 10, 1924. Decided January 5, 1925.)

No. 1666.

1. **Trade-marks and trade-names and unfair competition** 43—Publisher of magazine supplying moving picture film producer with news items for exhibition under heading "Topics of the Day" held not entitled to registration of such heading as trade-mark.

Where film producer entered into contract with magazine publisher for use of news items taken from magazine for exhibition on moving picture screens under the heading "Topics of the Day Selected from the Press of the World by" such magazine, and where producer undertook to defray all expenses, and only consideration moving to publisher was publicity received, the publisher was not entitled to registration of words "Topics of the Day" as trade-mark applied to moving picture films.

2. **Trade-marks and trade-names and unfair competition** 3(4)—Headings in magazine held not trade-marks.

Headings in magazine, such as "Topics of the Day," "Foreign Comment," "Science and Invention," etc., *held* not trade-marks.

Appeal from the Commissioner of Patents.

Trade-mark cancellation proceeding by the Timely Films, Inc., against the Funk

& Wagnalls Company. From decisions sustaining a petition for cancellation, the latter appeals. Affirmed.

E. V. Myers, of New York City, for appellant.

E. T. Brandenburg, of Washington, D. C., and J. F. Brandenburg and C. J. Heermance, both of New York City, for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from concurrent decisions of the Patent Office tribunals in a trade-mark cancellation proceeding, sustaining the petition for cancellation of a mark consisting of the words "Topics of the Day," as applied to moving picture films.

Early in 1918, A. E. Siegel, appellee's predecessor, conceived the idea of projecting on moving picture screens current news items, such as are found in the Literary Digest. Thereupon he interviewed Funk & Wagnalls Company, publishers of the Literary Digest and appellants here, explained his ideas, and was referred to the advertising manager, Mr. Dame. As a result, he put his proposition in the form of a letter, under date of April 30, 1918, in part as follows: "Now my proposition is as follows: I would undertake to distribute these slides throughout the United States and England at my own expense, and the cost of manufacturing these slides would also be borne by me; all advertising in the trade papers of our business would also be paid by me, and in each case the name of the Literary Digest would be used, with an aim to spread broadcast your great journal, and also put forth every effort to increase the circulation of the Literary Digest—all at my own expense with relation to this project. In return for this, all that I expect to receive from the Literary Digest or Funk & Wagnalls Company is the material printed in the above-named magazine under 'Topics in Brief,' and any other such material that the writer would find advantageous to. the Literary Digest of the Screen. * * * Now, Mr. Dame, I believe I have made matters fairly clear as to what my, proposition would be. It is at no time necessary for a cash expenditure on your part, only the supplying of the materials mentioned."

Under date of May 6th, Funk & Wagnalls, through Mr. Dame, accepted Mr. Siegel's proposition in a letter containing the following: "This is to confirm our conversation regarding the arrangement for your using extracts from the Literary Digest in a screen service for moving picture theaters. We agree to set up in type and furnish proofs on cardboard fifteen selections to be made by you from the 'Topics in Brief' department of the Literary Digest each week, and you are to reproduce these selections on slides under the general heading 'Topics of the Day Selected from the Press of the World by The Literary Digest.' * * * All expense for advertising and distributing, or any other expenses incurred to the end that the slides will have the widest circulation are to be borne by you, it being understood that the entire co-operation on the part of Funk & Wagnalls Company and the Literary Digest is outlined in the second paragraph above. This arrangement is to continue for six months from date of this letter, and may be continued for such additional period as may mutually be determined upon at the end of six months, provided the publicity results to Funk & Wagnalls Company and the Literary Digest justify such continuation."

In February of 1919 the Timely Films, Inc., succeeded to Siegel's interests, and thereafter Funk & Wagnalls recognized the succession. Meanwhile the enterprise reached proportions probably not contemplated by either party at the outset. It was not long before appellee, instead of taking all its material from the Literary Digest, maintained a force of editors who prepared the topics program, which was subject before use to the approval of the Funk & Wagnalls Company, that company being unwilling to have its name associated with any material it did not approve. After the appellee company succeeded Mr. Siegel, all films bore the following caption:

> "Timely Films, Inc.
> Presents
> Topics of the Day
> Selected by
> The Literary Digest."

At the time testimony was taken, the cost of the preparation and distribution of these films amounted to approximately $225,000 per year. An examination of the correspondence between the parties, as various extensions of the arrangement were made, indicates very clearly that the object of the Funk & Wagnalls Company, as stated in the original letter to Siegel, was publicity and that alone. To illustrate: In a letter from that company to Siegel, under

date of July 12, 1918, it is said: "We hope that three years hence the 'Topics' will be a big thing for you, and, if it is, it will, of course, be a good advertising feature for us." Again, on January 4, 1919, the company wrote Siegel: "The results, so far as we have been able to determine, have been quite satisfactory from a publicity standpoint."

Some time prior to October 20, 1920, the Timely Films company sought a longer extension of the existing arrangement between it and the Funk & Wagnalls Company, the latter company being disinclined to agree to an extension unless it received one-third of the stock of Timely Films, Inc. Pending these negotiations the Funk & Wagnalls Company, without the knowledge of Timely Films, Inc., registered the mark in controversy. When this came to the attention of the appellee company, cancellation proceedings were instituted, resulting as already indicated.

[1, 2] It is apparent, we think, without extended discussion, that the business in which Mr. Siegel was to embark, when he entered into the original arrangement with the Funk & Wagnalls Company, was to be his business and not that of the company. It was a perfectly natural arrangement. The company was to supply him with certain material, and, in return therefor, was to receive valuable advertising. Its sole obligation, as stated in its original letter to Siegel, was to assist him in the preparation of selections for his use. It exercised no control over his contracts with the moving picture concerns and was in no way responsible therefor. In short, Mr. Siegel was to conduct the business for himself, and not for Funk & Wagnalls, from whom he in effect purchased his supply of information. There was no basis, therefore, for the registration of this mark to the Funk & Wagnalls Company. Whether, as contended by that company, a trade-mark use in connection with a periodical formed a basis for the present registration, we need not determine. But see Atlas Mfg. Co. v. Street, 204 F. 398, 122 C. C. A. 568, 47 L. R. A. (N. S.) 1002. In the Literary Digest of the Funk & Wagnalls Company there is a department under the head of "Topics of the Day" and a further subtitle "Topics in Brief"; but in neither case are the words used in a trade-mark sense. Rather are they used as descriptive of the current items that follow them. In other words, any other periodical would be entitled to the use of such a heading. The name of the periodical is "The Literary Digest," and there is no justification for saying that any particular subheading constitutes a trade-mark. To illustrate: The first subheading is "Topics of the Day," the second "Foreign Comment," the third "Science and Invention," the fourth "Letters and Art," the fifth "Religion and Social Service," the sixth "Current Poetry," the seventh "Problems of Democracy," and the eighth "Personal Glimpses." If one of these subheadings constituted a trade-mark, then all did.

The decision was right, and is affirmed. Affirmed.